1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANE DOE and ANNE RASKIN,

　　　　　　　　Plaintiffs,

　　　v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

　　　　　　　　Defendants.

NO. C10-04700 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION FOR SUMMARY
JUDGMENT

　　　This matter came before the Court on November 28, 2011, on a motion for summary judgment filed by Defendants City and County of San Francisco ("CCSF").  For the reasons set forth below, the motion is GRANTED as to Plaintiffs' second cause of action, and DENIED with regards to the remaining claims.

**BACKGROUND**

　　　Plaintiffs Jane Doe and Anne Raskin, ("Doe" and "Raskin" or "Plaintiffs"), employees of Defendant City and County of San Francisco Department of Emergency Communications ("DEC"), contend that there has been a longstanding culture of bullying, hazing, and female-on-female gender-based harassment on the midnight shift of the DEC 911 dispatch.  Following a long and intricate history of conflict between Plaintiff Doe and her supervisors, named as Defendants in this case, an incident involving Doe's personal email account brought the discord to a head in the fall and winter of 2009.

　　　DEC provides a bank of computers for use by employees on their breaks, on which employees may check personal email and use the internet for non-work-related reasons, so long as they do not use the computers for any improper purpose.  In October of 2009, 28 emails from Jane Doe's personal Yahoo! email account were printed by Defendants and

submitted to the DEC's human resources department for review, based on (according to Defendants) the concern that the emails may contain confidential DEC personnel information, improperly disclosed by Doe to outside parties.  According to Defendants, these emails were found by one of the Defendants when Doe left them open in multiple minimized windows on the shared workplace computer.  According to Doe, the emails printed by Defendants were not open in minimized windows, but found by Defendant Madsen, who Doe claims searched through her inbox, sent mail, and folders to find emails containing potentially incendiary communications.

In December of 2009, Doe was informed of the emails received by human resources, during the course of their investigation (which ultimately did not find the emails violative of DEC policy).  On October 14, 2010, Doe and Raskin (whose writings were also contained in the emails, as she had corresponded with Doe) filed suit, alleging violations of the Federal Stored Communications Act, California's whistleblower statutes, invasion of privacy, intentional infliction of emotional distress, as well as several California Fair Employment and Housing Act violations relating to gender-based discrimination, sexual harassment, and retaliatory conduct.  On October 17, Defendants filed this motion for summary judgment, which we now consider.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.  The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

**DISCUSSION**

*1. Federal Stored Communications Act*

The Federal Stored Communications Act ("FSCA") provides a cause of action against any person or entity which "intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. 2701. In order for a claim to be sustained, it must be shown that the individual made such access "with a knowing or intentional state of mind." 18 U.S.C. 2707(a).

In the Ninth Circuit, the act is akin to the tort of trespass, in that it "protects individuals' privacy and proprietary interests. The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-1073 (9th Cir. 2004).

Violations of the act have been found where individuals used electronic means to acquire the passwords of others and use those passwords to access their email accounts. *See*

United States District Court

For the Northern District of California

3

*Miller v. Meyers*, 766 F.Supp.2d 919, 923 (W.D. Ark. 2011) and *Pure Power Boot Camp, Inc. V. Warrior Fitness Boot Camp*, 759 F.Supp. 2d 417, 423 (S.D.N.Y. 2010).

Here, the disagreement between the Defendants and Plaintiffs is twofold. The first disagreement pertains to the facts underlying this claim–while the Plaintiff contends that she did not leave her email open on the screen, the Defendants contend that Plaintiff did, in fact, leave open not just her inbox, but each individual email which was ultimately printed by Defendants. They contend that the individual emails were open and minimized at the bottom of the screen, and that the contents was only discovered in passing, as the emails were de-minimized by a Defendant co-worker who was simply closing the open windows. Plaintiff responds that this version of the facts is not true, and, in support of her contention, points out that the emails were pulled from various times over an 18-month period, and that it does not make sense that an individual checking their email would leave all these emails open–she contends that the emails must have been searched for in order to be discovered. Furthermore, she contends, the nature of the Windows XP program that was used on the shared computer on which these emails were found makes it unlikely that these emails were all individual visible when minimized, as the program tends to "group" minimized windows.

The second point of disagreement is as to what would constitute violation of the act. Plaintiffs claim that searching through an already-open inbox is the kind of "access" that would violate the act, while Defendants contend that there can be no violation, as the individual who went through the email was simply doing so in the process of closing open windows, and lacked the mens rea to be in violation of the act.

The second point is heavily reliant on the first, as Defendants do not contend that, if the Plaintiffs' version of the facts is indeed correct, and there was a full search of Jane Doe's inbox, there would nevertheless be no violation of this statute. The position of the Defendants is that there was no search of this kind, and Plaintiffs refute this contention. Both sides have presented evidence in support of their version of events, and, therefore, there exists a genuine issue of material fact for the jury.

*2. Privacy Claims*

"All people are by nature free and independent and have inalienable rights including the right of privacy." Cal. Const., art. I section 1. Article I, section 1 of the California Constitution creates a right of action against private parties and governmental entities. *Hill v. National Collegiate Athletic Ass'n.*, 7 Cal.4th 1, 20 (1994).  To establish a claim of violation of privacy under Article I, section 1 of the California Constitution, a plaintiff must show that defendants engaged in conduct which invaded plaintiff's privacy interest, that plaintiff had a reasonable expectation of privacy as to the interests invaded, that the invasion was serious and that the invasion caused plaintiff to suffer injury, damage, loss or harm. *Hill*, 7 Cal. 4th at 32-37.

There are two recognized types of privacy interests: "informational privacy," which is the interest in precluding dissemination or misuse of sensitive or confidential information, and "autonomy privacy," which is the interest in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference. *Id.* at 35.  A public employee does not have a diminished expectation of privacy in his or her personal information. *Long Beach City Employees Assn. V. City of Long Beach*, 41 Cal. 3d 937, 950-951 (1986).

A reasonable expectation of privacy is "an objective entitlement founded on broadly based and widely accepted community norms." *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 1000 (2009).  Employees possess some reasonable expectation of privacy in data stored on work computers (*see U.S. v. Ziegler*, 474 F.3d 1184, 1190 (9th Cir. 2007)) but "the use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to the use of his employer's computers." *TBG Ins. Services Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002).  In that case, an employee used his employer's computers to access sexually explicit material, and was fired.  The Court held that since employers often monitor employees' computer use and the plaintiff knew his use could be monitored, he lacked any reasonable expectation of privacy. *Id.* at 452-45.

However, "Whether a legally recognized privacy interest exists is a question of law, and whether the circumstances give rise to a reasonable expectation of privacy and a serious invasion thereof are mixed questions of law and fact.  If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 371-372 (2007).  The plaintiff contends that the emails are covered by the Meyers-Milias-Brown Act, Gov. Code section 3500 et seq, which ensures public employees' right to engage in a wide range of union-related activities without fear of sanction (gov. Code section 3506).  Additionally, the circumstances at DEM are somewhat different than in the *TBG* case above, as the union rules, as contained in the Collective Bargaining Agreement between the City/County of SF and the Local 1021 contain a provision protecting the privacy interests of union members: "Employees subject to this Agreement shall have a reasonable expectation of privacy and to be secure from unreasonable searches and seizures on his/her person and his/her work area to the extent provided by law".  In *TBG,* the plaintiff had signed a statement from his employer which disclosed the employer's policy of monitoring his email. In this case, no such policy existed.

The Defendants argue that there was no reasonable expectation of privacy in this case, and, furthermore, that the emails were in plain view.  They also contend that any invasion of Plaintiffs' privacy was not serious, citing *Hill*, 7 Cal. 4th at 36-37 for the proposition that in order to be considered serious, a violation must "constitute an egregious breach of the social norms underlying the privacy right." Plaintiffs respond that there was a reasonable expectation of privacy, citing the union rules listed above, and further argue that the invasion was clear and serious, as it involved an unauthorized access of Plaintiffs' email and resulted in "interference with and surveillance of Union activities." Plaintiffs further contend that they suffered emotional injury and harm because of the invasion, including humiliation, mental anguish and extreme distress.

Once again, as there is no agreement as to the facts underlying the "email incident," and that question is determinative in considering whether there was a reasonable expectation

of privacy and whether it was invaded. The facts surrounding the role of the computer terminals at DEM, their use and their understood purpose, and the events surrounding the alleged invasion of Jane Doe's email account are clearly in dispute, and therefore summary judgment is not appropriate as to these claims.

*3. California Labor Code Claims*

The Defendants contend that these claims fail because Plaintiffs' failed to exhaust their administrative remedies. The Plaintiffs concede this point, and therefore summary judgment is GRANTED as to the Plaintiffs' second claim for relief, violations of California Labor Code sections 98.6, 1102.5, and 6310.

*4. Gender Discrimination Claims*

In order to prevail on a claim of gender discrimination under California's Fair Employment and Housing Act, Cal. Government Code section 1290, ("FEHA") a plaintiff must prove that their managers acted with an intent to unlawfully discriminate against or harass them on the basis of their gender and that they suffered adverse employment action or, otherwise, that the alleged conduct was sufficiently severe and pervasive to alter the terms and conditions of their employment and create an abusive environment. *Oncale v. Sundowner Offshore Services, Inc*. 523 U.S. 75, 81 (1998); *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121 (1999). "The critical issue...is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 423 U.S. at 80-81.

There is a three-stage burden-shifting test for discrimination claims in California. First, the Plaintiffs must show a *prima facie* case of discrimination. The plaintiff's burden is "not onerous" but "must at least show actions taken by the employer from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.' Once the plaintiff establishes a prima facie case, a presumption of discrimination arises. This presumption, though 'rebuttable," is

United States District Court
For the Northern District of California

7

'legally mandatory.'...The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354-356 (2000) (citations omitted). These facts may be proved circumstantially, from facts that create a reasonable likelihood of bias and are not satisfactorily explained. *Sandell v. Taylor-Listug, Inc.*, 188 Cal.App.4th 297, 307 (2010). Furthermore, discriminatory animus need not be the sole motivation behind a challenged action: the plaintiff need only prove a "'causal connection' between the employees protected status and adverse employment decision." *Mixon v. Fair Employment and Housing Com.*, 192 Cal.App.3d 1306, 1319 (1987).

Defendants argue that the Plaintiffs have not presented evidence that the alleged misconduct has to do with gender. They rely heavily on the fact that what is alleged here is woman-on-woman discrimination, which they seem to find improbable. They do not adequately address the fact that the Plaintiffs have discussed the difference between how men and women were treated in the workplace. The Plaintiffs contend that their deposition testimony is sufficient to meet the required showing that, had Plaintiffs been men, they would not have been treated in the same manner (referencing nearly verbatim the standard articulated in *Accardi v. Superior Court*, 17 Cal. App. 341, 348 (1993) on which Defendants rely). Again, if one believes Plaintiffs' contention that men were not expected to behave in a "subservient" manner, and not subjected to similar abusive conduct by their superiors, then it is reasonable to determine Plaintiffs' burden has been met. As the facts underlying this claim are in dispute, this is an issue proper for a jury determination, and not appropriate for determination on summary judgment.

*5. Sexual Harassment Claim*

The laws prohibiting gender harassment are not intended as a "general civility code." *Oncale*, 523 U.S. at 81. Sporadic use of abusive language, gender-related jokes, occasional teasing, or isolated or trivial comments are not enough. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Etter v. Veriflo Corp*, 67 Cal. App. 4th 457, 465 (1998). Rather,

United States District Court

For the Northern District of California

an employee must show "a concerted pattern of harassment of a repeated, routine or a generalized nature." *Lyle v. Warner Bros. TV Prod.*, 38 Cal. 4th 264, 283 (2006).

Furthermore, the harassment must create a hostile environment, which requires a showing of harassment sufficient that a reasonable person would consider it severe enough to alter the conditions of her employment or create an abusive working environment. *Fisher v. San Pedro*, 214 Cal. App. 3d 590, 609 (1989).  Whether or not such a hostile work environment exists is to be determined only by considering all the circumstances involved. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

> Careful consideration [must be given] to the social context in which particular behavior occurs and how it is experienced by its target.  The real social impact of workplace behavior depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.  Common sense, and appropriate sensitivity to social context will enable courts and juries to distinguish...conduct which a reasonable person in the plaintiffs' position would find severely hostile and abusive.
> *Oncale*, 523 U.S. at 81-82.

Sexual harassment need not be sexual in nature.  *Miller v. Department of Corrections*, 36 Cal. 4th 446, 469 (2005). Sexual favoritism may also constitute sexual harassment.  *Id.* at 450-451.

Here, Defendants contend that the conduct described by Plaintiffs as sexual harassment is, in fact, nothing more than reprimands regarding their work, which, be they fair or unfair, are not sexual harassment. They argue that none of the conduct alleged by Plaintiffs, including disciplinary investigations which were never followed through, or other work-related hostility alleged by the Plaintiffs, is provably based on gender.  Plaintiffs point to the case law allowing circumstantial proof of gender-based abuse and contend that the conduct they have alleged, taken in context, is sufficient.

The crux of the issue is a determination as to, first, whether the conduct alleged by Plaintiffs did, in fact, occur as they claim,  and, second, whether or not the motive for the conduct was gender-related.  Neither of these determinations is a question of law–both are actual disputes as to the material facts in the case, and therefore summary judgment is inappropriate as to this issue.

9

*6. Failure to Prevent Claims*

The entirety of Defendants' argument as to these claims is that there is no triable issue as to the discrimination, harassment or retaliation claims, and therefore there was no misconduct to be prevented.  Therefore, if the Court finds that there is a triable issue as to these claims, the Defendants have made no other argument as to why this claim should be decided on summary judgment. Plaintiffs have addressed the issue in their briefing, pointing out that it is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" (Cal. Gov. Code section 12940(k)) and that, despite Plaintiffs' numerous reports of discrimination, retaliation and harassment, the City and County of San Francisco did nothing to step in, and failed to investigate the complaints.  The facts underlying this claim being disputed, summary judgment is inappropriate as to this issue.

*7. Retaliation Claims*

Defendants largely lump their retaliation argument in with their argument about Plaintiffs' whistleblower claims, which the Plaintiffs have conceded are barred by their failure to exhaust administrative remedies.

Government Code section 12940(h) makes it an unlawful employment practice to "discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." A *prima facie* case of unlawful retaliation may be made by showing that (1) Plaintiff engaged in activities protected by the Fair Employment and Housing Act, (2) their employers subsequently took adverse employment action against them and (3) there was a causal connection between the protected activity and the adverse employment action.  *Miller*, 36 Cal. 4th at 472 (2005).  Retaliatory animus need not be the sole factor motivating the adverse employment decision, but need only be a substantial or motivating factor.  *George v. California Unemployment Ins. Appeals Bd.*, 179 Cal. App. 4th 1475, 1492 (2009).

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

In determining whether an action or conduct rises to this level, the Court must take into account the unique circumstances of the affected employee as well as the workplace context of the claim. *Yanowiz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1052 (2005). Negative references, performance reviews, and refusal to consider for promotion have all been considered adverse employment actions. *Brooks v. City of San Mateo*, 2298 F.3d 917, 928-929 (9th Cir. 2000). Intent to retaliate may be shown by either direct or circumstantial evidence. *Colarossi v. Coty US Inc.*, 97 Cal. App. 4th 1142, 1153 (2002). An employer may not retaliate against an employee who opposed discrimination against a fellow employee, even if that employee was mistaken and there was no discrimination, so long as the mistake was sincere and reasonable. *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 477 (Cal. App. 2d Dist 1992).

Again, the disagreement between the parties is factual–the Plaintiff alleges that her threat to expose the policy violations and bad practices of her superiors resulted in bullying, abuse, and negative workplace treatment, while, though the Defendants presumably disagree with this contention, they devote their argument to Plaintiffs' failure to exhaust remedies. The argument brought by Defendants on this issue is undermined by the determination in *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074 (2003), in which the court held that an employee who has suffered employment-related discrimination is not required to exhaust the city's internal administrative remedy and the administrative remedy provided by FEHA before filing a FEHA discrimination claim.

*8. Intentional Infliction of Emotional Distress*

The elements of a claim for intentional infliction of emotional distress ("IIED") are outrageous conduct by defendant, with the intention of causing, or reckless disregard of the probability of causing emotional distress; the plaintiff's suffering severe emotional distress and the actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Davidson v. City o f Westminster*, 32 Cal. 3d 197, 209-210 (1982). Though Defendants assert that this claim duplicates the FEHA claims, it is established that a

plaintiff may allege both employment discrimination and the additional injury of intentional infliction of emotional distress.  *See Rojo v. Kliger*, 52 Cal. 3d 65, 82 (1990).

Conduct sufficient to sustain a claim of IIED  must be "outrageous beyond the bounds of human decency." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 617 (1989).

Here, Defendants contend that the conduct in question does not rise to the IIED standard, and was merely the rigorous, difficult training a dispatcher must go through, which sometimes involves abusive language.  Plaintiffs respond that the "panoply of extreme and outrageous conduct that terrorized and tormented Plaintiff... with the goal of causing her to suffer extreme duress, emotional distress, fright and intimidation" does, in fact, meet the IIED bar. Again, this is properly construed as a question of fact, entirely dependent on factual issues presently in dispute. It is not the Court's role to determine credibility, and therefore these factual disputes must be presented to a jury, and not determined on summary judgment.

**CONCLUSION**

For the reasons set forth above, the motion for summary judgment is GRANTED as to the second claim for relief, and DENIED as to the remaining claims.

**IT IS SO ORDERED.**

Dated: 12/13/2011

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT