IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANE DOE and ANNE RASKIN,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

NO. C10-04700 TEH

ORDER ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

This matter comes before the Court on a motion for judgment as a matter of law brought by Defendants Janice Madsen, Kim Dougherty, Audrey Hillman, Heather Grives and City and County of San Francisco (collectively, "Defendants"). For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

Plaintiffs Maura Moylan (formerly referred to as "Jane Doe"; hereinafter "Moylan") and Anne Raskin ("Raskin") contend that they were bullied, harassed, and discriminated against on the basis of gender by Defendants while employed by the Department of Emergency Management ("DEM"), and suffered further violations of their right to privacy and of the federal Stored Communications Act when Defendants accessed Moylan's email from a shared workplace computer. A seven-day jury trial was held, and, at the close of evidence, Defendants timely moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. On April 23, 2012, following the April 11, 2012, return of the jury's verdict in this case, this Court requested further briefing on the instant motion, and timely received Plaintiffs' opposition and Defendants' reply on May 7 and 14, 2012, respectively.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law. Under Rule 50(a)(1),

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

The motion must be made before the case is submitted to the jury and must "specify ... the law and facts that entitle the movant to the judgment." Fed.R.Civ.P. 50(a)(2). The purpose of this requirement is "to call the claimed deficiency in the evidence to the attention of the court and to opposing counsel at a time when the opposing party is still in a position to correct the deficit." *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir.1996) (quoting *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1429 (9th Cir.1986)).

Federal Rule of Civil Procedure 50(a) provides that once a party has been fully heard on an issue during a jury trial, the court may grant a motion for judgment as a matter of law against the non-moving party only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a); *Ritchie v. United States*, 451 F.3d 1019, 1022–23 (9th Cir.2006).

In deciding a motion under Rule 50(a), the Court reviews all of the evidence and draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Court is not permitted to make credibility determinations or weigh the evidence. *Id.* The salient inquiry is whether the evidence "permits only one reasonable conclusion [.]" *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002).

**DISCUSSION**

Defendants move for judgment as a matter of law on all claims brought by Plaintiffs Raskin and Moylan. In light of the jury verdict for Defendants on Raskin's invasion of privacy claims, both Plaintiffs' intentional infliction of emotional distress claims against Defendants Madsen and Grives, both Plaintiffs' gender discrimination claims under California Government Code section 12940(a), both Plaintiffs' hostile work environment harassment claims under California Government Code section 12940(j), and both Plaintiffs' sexual favoritism claims under California Government Code section 12940(j), the motion as to these claims is DISMISSED AS MOOT.

*1. Stored Communications Act*

The Stored Communications Act provides a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided ... and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. §§ 2701(a)(1), 2707(a). "[E]lectronic storage" means either "temporary, intermediate storage ... incidental to ... electronic transmission," or "storage ... for purposes of backup protection." Id. § 2510(17). The Act exempts, *inter alia*, conduct "authorized ... by the person or entity providing a wire or electronic communications service," *id.* § 2701(c)(1), or "by a user of that service with respect to a communication of or intended for that user," *id.* § 2701(c)(2). Punitive damages may be recovered if the violation was willful or intentional. 18 U.S.C. § 2707(c).

In the Ninth Circuit, the Stored Communications Act has been compared to the common law tort of trespass: "[l]ike the tort of trespass, the Stored Communications Act protects individuals' privacy and proprietary interests. The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility. Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, cf. Prosser and Keeton on the Law

3

of Torts § 13, at 78 (W. Page Keeton ed., 5th ed.1984), the Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-1073 (9th Cir. 2004). This protection has been extended to include an individual's webmail inbox. *See Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 974 (C.D. Cal. 2010).

Here, Defendants argue that Plaintiffs' email communications were open at the time they were accessed by Defendants–in other words, that all 28 emails had been opened in separate windows on the computer screen, and then minimized in such a way as to cause each to appear in succession when one was closed, and so as to make closing these windows without viewing the contents impossible. The technical mechanism or software which would cause this phenomenon remains unexplained, but, nevertheless, Defendants contend that this was the means through which the emails were discovered, and that, therefore, any access by Defendants of Plaintiffs' email did not violate the Act. They argue that the webmail inbox was only accessed once via the password entered by Moylan when she initially logged into her email, and therefore any further viewing of the emails cannot constitute Access under the Act.

Defendants' argument that viewing open windows–or windows popping up onto a screen, after a web mail inbox has been left open–does not constitute "access" under the Act relies on a patchwork of cases from districts far afield. These cases are cited in Defendants' motion solely for the fact that the means of access in those cases differed from that in the instant case. For example, in *Miller v. Meyers,* a case from the western district of Arkansas, a husband used a keystroke logger to obtain passwords and thereby accessed his ex-wife's online account. 766 F.Supp.2d 919, 923 (W.D. Ar. 2011). In *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, a search of an office computer's cache revealed passwords which were then used to gain access to an employee's email. 759 F.Supp.2d 417, 423 (S.D.N.Y. 2010).

However, neither of these cases hold that such methods are required–rather, they merely provide examples of other means by which unauthorized access to an individual's

4

stored online communications can be gained. Moreover, they arise in districts not governed by the Ninth Circuit's analytical framework, which approaches this statute as equivalent to the common law tort of trespass. The commonality between these cases is that, in each, unauthorized access was gained to the stored online communications of an individual, without that individual's permission. There is no specific technological means requirement inherent in either the statute itself, or the relevant case law.

Even accepting the standard constructed by Defendants, the argument relies entirely upon Defendants' version of the facts, which is hotly disputed by Plaintiffs, and against which there was substantial evidence presented at trail. Defendant has contended, and continues to contend, that Defendants did not open the emails themselves, but rather were confronted by those emails, open on the screen, and could therefore not avoid viewing the contents. The testimony given by various witnesses at trial, however, did not clearly support–and in some instances, strongly disputed–this version of events. Moylan testified unequivocally that she had not left her emails open on the screen. Tr. 480:7-10. Kim Dougherty provided testimony which seemed in many ways to contradict itself, first testifying that the emails were open on the screen, then testifying that clicking the "x" in the corner of a window–to close the email window–somehow caused more email windows to open spontaneously. Tr. 198:9-14; 200:5-15. Janice Madsen, for her part, gave, at trial, a confusing account of how the emails came to be open, which contradicted her deposition testimony. Tr. 226-229.

This testimony is evidence supporting a version of the facts not acknowledged by Defendants in their motion, specifically, that the emails were affirmatively opened by Defendants, and Moylan's inbox sifted through, rather than the messages having been simply found open in their entirety. As this evidence makes reasonable the conclusion that Defendants intentionally accessed Moylan and Raskin's[1] private email communications, the

---

[1] Defendants also challenge Raskin's standing on this cause of action, contending that, because it was not her inbox which was accessed, she has no standing to bring a claim under this section. Though it was not her inbox, the Court nevertheless finds that it was her stored online communication, giving her standing to sue under this section.

5

Court may not grant judgment as a matter of law in favor of Defendants. The motion for judgment as a matter of law on this count is DENIED.

*2. Invasion of Privacy*

Defendants' argument in favor of judgment as a matter of law on Plaintiffs' invasion of privacy claims[2] rests on the reasonable expectation of privacy, which "is an objective entitlement founded on broadly based and widely accepted community norms." *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal.4th 992, 1000 (2009). Defendants argue that there was no reasonable expectation of privacy on the shared work computer, that, even if there was such an expectation, it was forfeited by leaving emails open on the screen, and, furthermore, that even if there was an invasion of privacy, it was not sufficiently serious to merit relief.

The elements of a claim for violation of the right to privacy afforded by the California Constitution are (1) conduct invading privacy interests, (2) a reasonable expectation of privacy as to the interests invaded, (3) seriousness of the invasion and (4) a resultant injury, damage, loss or harm. *Hill v. National Collegiate Athletic Ass'n.*, 7 Cal.4th 1, 39-40 (1994). Here, Defendants argue that because the computer was a workplace machine, the expectation of privacy is reduced, relying on cases where the employee was aware that his computer usage could be monitored, and therefore had no reasonable expectation of privacy when such use was, in fact, monitored by an employer. *See TBG Ins. Services Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002). However, *TBG* applied community norms standard quoted above, and, though it provides an example of a scenario in which a court found no legitimate privacy interest, it is not dispositive in this case, nor does it alter the Court's analysis.

Evidence was presented that the machine used in this case was shared, but designated specifically for personal use by employees. Tr. 480:14-15; Tr. 164-165. Furthermore, there was testimony that employees routinely used this terminal for private, personal activities such as accessing their personal web-based email, social networking websites, and even

---

[2] As the jury found no liability for invasion of Anne Raskin's privacy, only Maura Moylan's invasion of privacy claims are dealt with here.

6

printing their pay stubs. Tr. 164-165. When a user would inadvertently leave their inbox open on the screen, it was routinely closed by the next user. Tr. 165:6-11. In short, it was understood, in the workplace community, to be a terminal on which employees were able to privately access their personal internet utilities and communications, without expectation of employer intrusion. In light of this evidence, a reasonable jury could conclude that Plaintiff Moylan had a legitimate expectation of privacy when she used the terminal to access her personal web-based email.

Defendants' second argument, which is that the privacy interest Moylan might have had in the computer was forfeited when she left emails open on the computer, is undermined by the evidence presented at trial that she did not, in fact, leave her email open on the computer. Tr. 480:7-10.[3] In spite of Defendants' refusal to accept this version of events, it is nevertheless evidence on which a reasonable juror might rely in finding that Moylan did, in fact, have an unforfeited privacy interest, and therefore suffered a violation of her right to privacy under the California constitution.

Defendants' final argument for judgment as a matter of law on the invasion of privacy claims by Plaintiff Moylan is that any invasion was not sufficiently serious so as to constitute an invasion of privacy. "'Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part.' (Rest.2d Torts, supra, § 652D, com. c.) Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." *Hill*, 7 Cal.4th at 36-37. Defendants argue that the invasion, if any, "did not breach social norms" as the "emails were in plain view". Mot. For J. As A Matter Of Law at 8, lines 15-17. However, evidence was presented at trial that these communications consisted of an employee's complaints to a union steward regarding

---

[3] Plaintiff's contention that she did not leave 28 emails open and minimized on the screen was further supported by her initial complaint to her department, in which she claimed her emails had been searched through by Madsen, Dougherty and Grives. Tr. 290-291.

7

1  workplace conditions. Tr. 480:15-17, 485:11-19. Furthermore, as discussed above, evidence
2  was presented in support of Plaintiff's version of events, which was that her email inbox was
3  deliberately searched. Defendant's argument relies on a different version of
4  events–specifically, that the emails were in "plain view"–and therefore does not account for
5  the seriousness and violativeness of social norms inherent in searching the personal email
6  inbox of another individual, without permission to do so. Because evidence of the
7  seriousness of this invasion was presented, and a reasonable juror could find, on the basis of
8  that evidence, that Moylan suffered a violation of her right to privacy, the motion for
9  judgment as a matter of law on this claim is DENIED.

*3. Intentional Infliction of Emotional Distress*

The elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant; (2) extreme or severe emotional distress to the plaintiff; and (3) actual and proximate causation between the two. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001 (1993). To be outrageous, the defendant's conduct must be either intentional or reckless, and it must be so extreme as to exceed all bounds of decency in a civilized community. *Id.* Malicious or evil purpose is not essential to liability. *KOVR–TV v. Superior Court*, 31 Cal.App.4th 1023, 1031, 37 Cal.Rptr.2d 431 (1995). In the usual case, outrageousness is a question of fact. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1045 (Cal.Ct.App. 2009); *Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1226 (1995); *Trerice v. Blue Cross of California,* 209 Cal.App.3d 878, 883 (1989).

Defendants ask the Court to find that the conduct in this case was, as a matter of law, insufficiently outrageous to constitute the basis for a claim of intentional infliction of emotional distress. However, as noted above, this is generally a question of fact for the jury, and therefore not appropriate grounds for judgment as a matter of law. The motion on this claim is therefore DENIED.[4]

---

[4]Defendants' further argument involving worker's compensation as the proper remedy for this claim as made against the City and County of San Francisco is moot, as the jury found no liability for intentional infliction of emotional distress on the part of the City and

8

*4. Retaliation*

In order to make out a claim for retaliation under California Government Code section 12940(h), "a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005) (internal quotations omitted). When an employee complains of conduct by the employer which is unlawful, such as gender-based discrimination or harassment in the workplace, it is considered protected activity whether the complaint is ultimately found to be valid or invalid. *Id.* at 1042-1043. The key inquiry is whether the complaining party believes the conduct about which they were complaining was unlawfully discriminatory. *Id.* Plaintiffs need not fully understand the legal basis for their complaint, nor use any specialized terminology to make their complaint a valid protected activity. *Miller v. Dept. of Corrections*, 36 Cal.4th 446, 474-475 (2005).

Though Defendants, in their motion, claim–without citation to the record–that both Plaintiffs testified that the complaints they made regarding the way in which they were being treated in the workplace were not about gender discrimination or harassment, the record reveals this representation to be patently false: both Plaintiffs made complaints regarding what they believed to be discriminatory and harassing conduct on the part of their superiors. Both Raskin and Moylan testified repeatedly that they made complaints regarding their treatment, which they believed to be discriminatory. Tr. 360-362; 373-374; 383-384; 384:9-15; 494-495; 514-515; 520-521.

Plaintiff Raskin testified that she felt that her work environment favors men (Tr. 362:21), that she made complaints to the city regarding the discriminatory treatment (Tr. 374:2-9), that she initially believed the conduct against her was personal and then realized it was gender-based when she saw it happen to other women (Tr. 383: 6-7) and that the bullying she suffered was only done to the women in her workplace (Tr. 384: 9-11).

County of San Francisco.

9

1  Moylan testified that she made complaints about the way in which women in the
2  department were treated differently, and that others made complaints on her behalf as well
3  (Tr. 495:3-23), that the harassment got worse after she made the complaints (Tr. 514: 8-24),
4  that the Defendants about whom she complained were aware of the complaints and
5  subsequently increased the complained-of behavior (Tr. 514: 8-24 and 515:1-17), and that
6  she went to the Human Resources Department for the City and County of San Francisco and
7  complained–albeit after the email incident–and made an oral complaint followed by a written
8  complaint (Tr. 520-521).

9  Even if the testimony were inconclusive as to whether these complaints were
10 sufficient to constitute protected activity, the Court must, on a motion for judgment as a
11 matter of law, make all reasonable inferences in favor of the non-moving party. *Reeves*, 530
12 U.S. at 150.[5] Therefore, the motion for judgment as a matter of law as to the cause of action
13 for retaliation under California Civil Code section 12940(h) is DENIED.

15 *5. Failure to Prevent Retaliation, Harassment or Discrimination*

16 "[E]mployers must 'take all reasonable steps necessary to prevent discrimination and
17 harassment from occurring.' (Gov. Code, § 12940, subd. (k); *Weeks v. Baker & McKenzie*
18 (1998) 63 Cal.App.4th 1128, 1146 [74 Cal.Rptr.2d 510] [sexual harassment]; *Trujillo v.*
19 *North County Transit Dist*. (1998) 63 Cal.App.4th 280, 286 [73 Cal.Rptr.2d 596] [race
20 discrimination].) The employer's duty to prevent harassment and discrimination is affirmative

---

[5]Defendants further argue that the fact that hostility occurred both prior to and following Plaintiffs' complaints precludes an inference of retaliation. This argument is unavailing. Defendants cite a number of cases where the conduct allegedly constituting retaliation took place prior to the complaint. As a matter of logic as well as of law, these claims must fail, as an action preceding a complaint cannot constitute a retaliation against that complaint. However, here, the retaliatory conduct took place after the complaints, which Plaintiffs made at various times during the course of their employment, and which largely occurred prior to the email incident underlying the Stored Communications Act and invasion of privacy claims. A reasonable jury could find that the conduct following complaints was causally linked to the complaints about which Plaintiffs testified: the evidence presented could support the conclusion that the conduct to which Plaintiffs were, in their view, subjected could constitute retaliatory conduct and therefore support a finding of liability. Because the Defendant cannot meet the standard required for judgment as a matter of law and demonstrate that the evidence "permits only one reasonable conclusion," the motion for judgment as a matter of law on this claim must be denied. *Pavao*, 307 F.3d at 918

and mandatory. (Gov. Code, § 12940, subds. (j)(1) & (k).) Prompt investigation of a discrimination claim is a necessary step by which an employer meets its obligation to ensure a discrimination-free work environment. (*See, e.g., Adler v. Wal-Mart Stores, Inc.* (10th Cir. 1998) 144 F.3d 664, 676; *Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 881-882; *Jones v. Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 810-811 [244 Cal.Rptr. 37].)" *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal.App.4th 1021, 1035-36 (2002).

Defendants' argument with regard to this cause of action is straightforward, contained in only one sentence in their motion for judgment as a matter of law, on the fifth and sixth lines of page 15. Simply stated, they believe that the absence of a triable issue as to whether or not there was discrimination, harassment, or retaliation bars the claim of failure to prevent the same. As the Court has found that there was, indeed, a triable issue raised by Plaintiff's retaliation claim, *supra*, this argument is invalid. Therefore, the motion for judgment as a matter of law as to this claim is DENIED.

**CONCLUSION**

For the reasons set forth above, Defendants' motion for judgment as a matter of law is DENIED.

**IT IS SO ORDERED.**

Dated: 6/12/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT